# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIMINAL NO. 5:19-101-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **FNU JOHN SADIQULLAH,** | |
| **Defendant.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the defendant Fnu Sadiqullah's motion (DE 142) for judgment of acquittal or, alternatively, for a new trial. The primary issue on both requests is whether there was sufficient evidence to support the jury's determination that Sadiqullah agreed to use a "hit man" to kidnap and kill.

This is a difficult decision for the Court. Nevertheless, given the defendant's heavy burden on both motions, the Court must deny them.

A jury found Sadiqullah guilty of two conspiracy counts. The first count was for conspiring to kidnap for ransom a man who owed Sadiqullah money – Lahoucine Elkohli – or Elkohli's son in violation of 18 U.S.C. § 1201(c). The second count was for conspiring to use interstate facilities in the commission of a murder-for-hire in violation of 18 U.S.C. § 1958.

Two men were indicted along with Sadiqullah. One of those men was Abdul Hadi, who was charged with the same two conspiracies as Sadiqullah. The second man was Mahmoud Shaker Shalash, who was charged not only with the same two conspiracy counts as the other two men, but also on two counts of money laundering that did not involve Hadi or Sadiqullah.

 Shalash later pleaded guilty to both money laundering charges and to just one of the conspiracies – the kidnapping conspiracy. In the plea agreement, the government agreed to move

at sentencing to dismiss the conspiracy to commit murder-for-hire charge against Shalash.

Sadiqullah and Hadi went to trial together on the two conspiracy charges. Shalash testified against the defendants. Another major witness was a man identified to the jury as Thomas Smith, who, unbeknownst to any of the defendants, was a confidential informant for the government during the entire period of the alleged criminal activity. After the trial, the jury acquitted Hadi of both conspiracy charges but convicted Sadiqullah of both.

## I.   Motion for Judgment of Acquittal

In his motion for a judgment of acquittal, Sadiqullah argues the government presented insufficient evidence for a jury to convict him of either conspiracy charge.

Sadiqullah has a "very heavy burden" on this motion. *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016). In reviewing a claim of insufficient evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Importantly, the Court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski,* 161 F.3d 992, 1006 (6th Cir. 1998). The Court will "reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Vichitvongsa*, 819 F.3d at 270 (quoting *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013)). "'Substantial evidence' is 'such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* (quoting *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015)).

The evidence at trial certainly proved that Sadiqullah and Hadi thought that Elkohli owed them quite a bit of money. In fact, the evidence showed that they thought Elkohli owed them and

two other men a total of $200,000. The issue raised by Sadiqullah in this motion is whether the government produced enough evidence for *any* rational juror to find that Sadiqullah agreed with Shalash to collect that money by using Smith to kidnap Elkohli or his son and then, after collecting the money, to kill Elkohli simply for revenge.

As the Court instructed the jury, both conspiracy charges require proof of an agreement to commit the underlying crime. (DE 125, Instruction Nos. 12, 13, 15; Sixth Circuit Pattern Jury Instruction Nos. 3.01A, 3.02.) The Court further instructed:

> This does not require proof of any formal agreement, written or spoken. Nor does this require proof that everyone involved agreed on all the details. But proof that people simply met together from time to time and talked about common interests, or engaged in similar conduct, is not enough to establish a criminal agreement. These are things that you may consider in deciding whether the government has proved an agreement. But without more they are not enough.
>
> What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people, to cooperate with each other to commit the [charged crimes.] This is essential.

(DE 125, Instruction No. 15; Sixth Circuit Pattern Jury Instruction 3.02.)

In the indictment, the government charged that the agreement to commit the underlying crimes was between Sadiqullah, Hadi, and Shalash. (DE 62, Superseding Indictment.) Again, Shalash pleaded guilty to the kidnapping conspiracy. The government has now dismissed the murder-for-hire conspiracy charge against Shalash. That dismissal is, however, is not dispositive on the issue of whether the government presented sufficient evidence on this charge against Sadiqullah. "[A]s a simple matter of logic, the government's voluntary dismissal of a conspiracy charge against a defendant's only alleged coconspirator does not preclude proof beyond a reasonable doubt, at defendant's trial, that the defendant conspired with that same alleged coconspirator." *United States v. Lopez*, 944 F.2d 33, 40 (1st Cir.1991). The government did not necessarily dismiss the charge against Shalash because there was not sufficient evidence to support it. Thus, the dismissal of the

3

charge against him does not preclude the jury from determining that there was sufficient evidence that Shalash and Sadiqullah agreed to commit murder for hire. *Id*. & n. 5.

Hadi was ultimately acquitted of both conspiracy charges. Again, however, the jury was still free to find that the other two defendants – Sadiqullah and Shalash – reached agreements to commit the crimes charged. In fact, even if Hadi and Sadiqullah had been the only defendants charged in the conspiracy, Hadi's acquittal would not necessarily affect the validity of Sadiqullah's conviction. *See, e.g. United States v. Houser*, 754 F.3d 1335, 1349, n. 60 (11th Cir. 2014).

As to government informant Thomas Smith, "[i]t is settled that proof of an agreement between a defendant and a government agent or informer is not sufficient to support a conspiracy conviction." *United States v. Hayden*, 68 F. App'x 530, 532 (6th Cir. 2003) (citing *United States v. Pennell*, 737 F.2d 521, 536 (6th Cir.1984)). "The rule that government agents do not count as coconspirators, however, is limited to situations in which the conspiracy involves only one defendant and a government informer." *Id*. "Although recorded conversations between the defendant and an informer or agent cannot establish a conspiracy, they may be used as evidence of a conspiracy between the defendant and other conspirators." *Id*.

In its response to Sadiqullah's motion, the government argues multiple times that the agreement it proved at trial was an agreement between Shalash and Sadiqullah to kidnap and kill. It states that "Sadiquallah agreed with Shalash on a plan to force repayment [of the money Elkohli owed Sadiqullah] by hiring Smith to travel in interstate commerce to kidnap Elkohli or his son." (DE 143, Response at 10.) It states that "Sadiqullah and Shalash agreed with each other to use Smith's services to collect money from Elkohli through kidnapping and violence." (DE 143, Response at 6.) It argues that it presented sufficient evidence that "Sadiqullah agreed with Shalash on a plan to force repayment by hiring Smith to travel in interstate commerce to kidnap Elkohli or his son." (DE 143, Response at 10.) The government argues that the "evidence showed that Sadiqullah formed a conspiracy with Shalash." (DE 143, Response at 12.) And it argues that "the evidence established the existence of an

4

agreement between Sadiqullah and Shalash to hire Thomas Smith to murder Lahoucine Elkohli." (DE 143, Response at 15.)

And the government charges that this agreement occurred during an April 30, 2019 meeting between Sadiqullah, Shalash, and government informant Smith. The government states that, at that meeting, "Sadiqullah and Shalash agreed with each other to use Smith's services to collect money from Elkohli through kidnapping and violence." As to Smith's role in the agreement, the government states that Smith "observed the formation of this agreement." (DE 143, Response at 6.)

The April 30 meeting occurred at the Day's Motel in Lexington, which is owned by Shalash. Most of the meeting was recorded on video and audio, and the government presented recordings to the jury. The jury was also provided written transcripts of the recordings, but the transcripts were not admitted into evidence. The jury also heard testimony from Shalash and Smith regarding the meeting.

On May 2, 2019, Sadiqullah confronted Elkohli at his place of business. Sadiqullah also had further communications with Smith that day. Some of these interactions were recorded, and Elkohli and Smith both testified about them. The testimony and recordings are further evidence of Sadiqullah's intent on April 30.

**A.  April 30 Meeting at Days Motel between Shalash, Smith, and Sadiqullah**

Shalash testified that he met Smith in 2016 at a religious conference in Miami, Florida. (DE 138, Shalash Tr. at 3.) During the relevant time, Shalash was the imam of the Islamic Center in Lexington. (DE 138, Shalash Tr. at 8.) Throughout all these events, unbeknownst to Shalash, Smith was acting as a government informant. In early 2019, Shalash agreed to clean money for Smith. (DE 138, Shalash. Tr. at 3-4.) During these money-laundering transactions, Shalash told Smith that a man named Ashraf Yousef owed Shalash money. (DE 138, Shalash Tr. at 4; DE 120, Smith Tr. at 72.) And during the

conversations with Smith about Yousef, Shalash told Smith about Elkohli, explaining that Elkohli owed a lot of money to other people in the community. (DE 138, Shalash Tr. at 7.)

Shalash testified that he learned about Elkohli's debt to others in February 2019, when three men came to the Day's Motel. (DE 138, Shalash Tr. at 8, 9.) One of those men was defendant Hadi, who told Shalash that the men had invested money with Elkohli and that Elkohli had not returned the money. The other two men were named Mohamed Mustafa and Azizullah Hanafi. (DE 138, Shalash Tr. at 9.) All three men, like Sadiqullah, are from Afghanistan. (DE 143, Govt. Response at 2.) Shalash had seen all three men at the Islamic Center but had never had a significant conversation with them until this February 2019 meeting at the Day's Motel. (DE 138, Shalash Tr. at 8-9.) Shalash testified that the men came to him for help because he is the imam, and people from the Islamic Center often sought his help with various situations, including financial issues. (DE 138, Shalash Tr. at 18.)

The men asked Shalash if he could help them get their money back, but Shalash told them there was nothing he could do because they did not have sufficient evidence that they had given Elkohli money. The transactions were all in cash. (DE 138, Shalash Tr. at 9-10.) Sadiqullah was not present for this conversation.

Shalash testified that, after the meeting with Hadi and the other two men, he met with Sadiqullah. (DE 138, Shalash Tr. at 17.) He testified the meeting with Sadiqullah was in March 2019. (DE 138, Shalash Tr. at 17.) Shalash testified that Sadiqullah and Hadi knew each other. Both men drove taxis, and Shalash had seen them together at the Islamic Center. (DE 138, Shalash Tr. at 17-18.)

There is no doubt that Sadiqullah was furious with Elkohli. Shalash testified that he told Sadiqullah about his February 2019 conversation with Hadi. He told Sadiqullah that he knew that Elkohli owed Sadiqullah money also. Shalash testified that Sadiqullah told him, "yes, and, you know, I will kill him if I get ahold of him." (DE 138, Tr. at 16-17.) Shalash testified that Sadiqullah came to him to speak

with him about the Elkohli situation because he is the imam. (DE 138, Shalash Tr. at 18.) Shalash testified that the March 2019 conversation was the only conversation he had with Sadiqullah about collecting money from Elkohli prior to the April 30 meeting. (DE 138, Shalash Tr. at 19-20.)

On March 26, 2019, Shalash sent Smith a message through the application known as "WhatsApp." The message stated that Shalash had heard Elkohli was in Florida. Shalash stated:

> [H]e got many people in [L]exington for at least half million dollars and more people are coming to tell me about him[.] [H]e was supposed to be making investment with big return but he took the money and ran and blocked every one he took money from[.] I am hurting bad so please help me if you can[.] [I] found his picture on Facebook.

(Sadiqullah Def. Ex. 19.)

Before Sadiqullah arrived at the April 30 meeting at the Day's Motel, Shalash discussed Elkohli with Smith. Shalash testified that he told Smith about Elkohli because he thought Smith was going to help him get his money back from Yousef. Shalash thought Smith could do the same for the four men from Afghanistan. (DE 138, Shalash Tr. at 10.) Shalash testified that, based on his conversations with Smith about Yousef, Shalash expected that Smith's methods of collecting money could include kidnapping and potential violence. (DE 138, Shalash Tr. at 14.) In the meeting, Smith told Shalash that he had located Yousef in Knoxville, Tennessee and that he knew Elkohli was in Florida. (Govt. Ex. 3C.) Shalash testified that he showed Smith a picture of Elkohli's mother and daughter to help him locate Elkohli. (DE 138, Shalash Tr. at 14-15; DE 120, Smith Tr. at 92; Govt. Ex. 3J at 11.)  Shalash told Smith that Sadiqullah and the other three men did not just want their money from Elkohli. "They don't want their money. He said they'll kill him." (Govt. Ex. 3K 12.) He testified that Sadiqullah told him this. (DE 138, Shalash Tr. at 16.)

Later in the meeting, Shalash called Sadiqullah. (DE 138, Shalash Tr. at 19; Govt. Ex. 3L at 14.) Shalash asked Sadiqullah to come to the motel. He stated, "Remember I told you that we're gonna get

7

that Lahoucine. I have a brother up here that he…you know, can help." (Govt. Ex. 3L at 15.) Shalash testified that he was referring here to the prior conversation with Sadiqullah in March 2019. (DE 138, Shalash Tr. at 19.) Shalash testified that he called Sadiqullah to the meeting instead of Hadi because Sadiqullah speaks English better. (DE 138, Shalash Tr. at 90.)

In the phone call, Shalash told Sadiqullah, "you can give him all information, you know, about all the Afghani brothers, and he'll you know…he'll help. I told you I can help you as much as I can, ok?" Sadiqullah responds, "Oh that's very good, brother, thank you so much." Sadiqullah states he will be at the motel in 20 minutes. (Govt. Ex. 3L at 15.) s

When Sadiqullah arrived at the meeting, Shalash and Smith were meeting on a back porch at the motel. (Govt. Ex. 3M.) Shalash introduced Sadiqullah to Smith. Shalash instructed Sadiqullah, "I want you to explain to him what happened, and maybe, you know, he can help." (Govt. Ex. 3M at 16.) Smith explains that he has determined that Yousef (who owed Shalash money) now owns a restaurant in Knoxville. (Govt. Ex. 3N at 17.) Smith states that he is going to "take a couple guys down to see this guy to try to collect [Shlash's] $80,000." (Govt. Ex. 3N at 18.) Sadiqullah states that Elkohli is in Orlando, Florida. He states that the three other Afghan men went to meet Elkohli in Orlando but told Sadiqullah nothing about it because there was a "conflict" between the men. Sadiqullah stated, "We blame each other." He explained that the other Afghan men incorrectly thought that Sadiqullah had already received his money back from Elkohli. (Govt. Ex. 3N at 18.)

Smith asks Sadiqullah if he knows where Elkohli lives in Florida. (Govt. Ex. 3N at 20.) Sadiqullah states that the other three men from Afghanistan know. Smith again asked if Sadiqullah can give him Elkohli's address. Sadiqullah again explains that the other three men went to Elkohli's home in Florida, but that they would not share the address with him. (Govt. Ex. 3N at 20.)

Smith then asks Shalash if, as the imam, he could "get all the brothers together and sit them down" and tell them they "need to act as one." (Govt. Ex. 3N at 21.) Shalash asks Sadiqullah if they could do that and Sadiqullah responds, "Yeah, you can arrange a time. . .because you're the imam. Like I told you before, too, you are the only one who can get rid of this problem between us." (Govt. Ex. 3N at 21.) Sadiqullah explains that, collectively, Elkohli owes the four men about $200,000. (Govt. Ex. 3N at 22.)

Shalash testified at trial that the purpose of giving Elkohli's address to Smith was "to go and get him, kidnap him and get the money." (DE 138, Shalash Tr. at 22.) He testified that his impression was Sadiqullah agreed with that. Shalash testified that Sadiqullah also agreed that, once he got the address from the other three men, he would give it to Smith. (DE 138, Tr. at 23.) He testified that the purpose of giving the address to Smith was to "get the money, whatever it takes." (DE 138, Tr. at 23.)

Later in the conversation at the Days Motel, Smith again explains he needs Elkohli's address. (Govt. Ex. 3N at 22.) Smith explains, "Then we can go down to Florida and knock on his front door in the middle . . . ." (Govt. Ex. 3M at 22-23.) Sadiqullah states, "We already knock on his door." (Govt. Ex. 3N at 23.) Smith explains he was speaking figuratively." He states, "we wait 'til he walks outside of his house, then we take him and put him in a car, and then we take him and do what we want to do with him until he pays the tab." (Govt. Ex. 3N at 23.) Shalash left the porch at this point in the conversation and went into a separate room to take some medicine. (DE 120, Smith TR at 32; Govt. Ex. 3N at 23.)

Smith and Sadiqullah then have a conversation alone. Smith asks Sadiqullah if he "care[s] what happens to this guy to get your money back." Sadiqullah states, "No, we don't care. We want him die." Smith asks, "You want him dead?" Sadiqullah responds, "Yeah, we want him die, you know, like because he made us die. You know what I mean?" Smith states, "No, inside he made you die."

9

Sadiqullah states, "He already killed us." Smith states," Yeah because he took your money." Sadiqallah agrees. He explains, "what he did, he destroyed the relationship between us, the trust he broke, the income we were making daily, the taxi. . . ." (Govt. Ex. 3N at 23.)

Smith states "Well it sounds to me like we need to get all the Afghan brothers together…and get everybody on the same page." (Govt. Ex. 3N at 24.) Shalash came back onto the porch very briefly while Sadiqullah was explaining how Elkohli had cheated him and the other men, but Shalash quickly announced that he had to go to the next building to check on something. (Govt. Ex. 3N at 25.)

When Sadiqullah and Smith were again alone, Smith began explaining to Sadiqullah that Elkohli was vengeful. (Govt. Ex. 3N at 25.) Sadiqullah states to Smith that Elkohli's actions in cheating the four men meant that Elkohli did not care about the men's lives, kids, income, or anything. He asks, "So why we should care about you? If someone can kill him for $10,000, we all four will pay someone $10,000. For example…."  (Govt. Ex. 3N at 26.)

Smith testified at trial that Sadiqullah's statement, "we want him die," is what made it clear to him that Sadiqullah wanted Elkohli dead. (DE 120, Smith Tr. at 102.) Smith testified that, when Sadiqullah stated that Elkohli "made us die," he did not literally mean that. Instead, he meant that Elkohli had made Sadiqullah die "financially" and that Sadiqullah's trust in Elkohli had died. (DE 20, Tr. at 33.) He testified, however, that when Sadiqullah stated, "we want him die," that was "a whole different ballgame." This is because, according to Smith, "when you offer $10,000 to do it, that's telling me you're offering me $10,000 to go kill the man." (DE 20, Tr. at 33.)

On the recording, Smith then stated that they would first need to get the money from Elkohli. Sadiqullah states, "No, that's an example, you know? We don't want him to be alive anymore, enjoy his life." (Govt. Ex. 3M at 26.) Smith states, "I understand that, but you first want your money back,

10

right?" (Govt. Ex. 3M at 26.) Sadiqullah states, "Of course we want our money back." Smith states, "Ok so the big thing is getting the money back … Then taking care of business." (Govt Ex. 3M at 26.)

Smith testified at trial that he interpreted Sadiqullah to be saying that, even if Smith located Elkohli and collected the money, Sadiqullah still wanted Elkohli "dead." (DE 20, Tr. at 34.) Later, on cross-examination, however, Smith testified that he could not "honestly tell you where [Sadiqullah's] intention was in that point of the conversation." (Govt. Ex. 3M at 106.) Later, on re-direct examination, however, Smith testified, "In my opinion, what he was telling me is that him and the other guys would pay me $10,000 to go whack this guy." (DE 120, Smith Tr. at 130.)

At the Days Motel meeting, Sadiqullah and Smith exchanged phone numbers. (Govt. Ex. 3P at 29.) Shalash then returned to the porch. (DE 138, Shalash Tr. at 23, Govt Ex. 3P at 29.) Smith tells Sadiqullah that he has "guys that will go down and see" Elkohli. (Govt. Ex. 3P at 29.) He states, "And if we got to kidnap his wife, we will do it. If we got to kidnap his daughter, we will do it." (Govt. Ex. 3P at 29.) Sadiqullah states, "His son is here in Lexington, and he love his son."' Smith states, "Listen to me. Then we'll kidnap his son. Because if he loves his son, he's going to give up his money." Shalash asks Sadiqullah, "Do you know where he is?" Sadiqullah responds, "He love his son. Yes, I know his mom. . . he can give everything away but not his son. . . He love the son." (Govt. Ex. 3P at 29-30.) Smith states, "then we take that little prick off, and we send the old man a picture. Put him in a chair. Beat the hell out of him. Send the old man a picture and say, 'if we don't have our money within two days, you're going to find body parts of this kid all over the place." (Govt. Ex. 3P at 30.) Sadiqullah states, "But he will claim a kidnap against us in court." Smith states, "nah." Shalash states, "You don't have to worry about it." Smith states, "you don't need to worry about that kind of crap, bro, believe me. This is my country. You understand?" (Govt. Ex. 3P at 30.) Smith states, "My guys. . .

we don't play…You send me to this guy, and you tell me to kill him, we will kill him." Sadiqullah responds, "We do really need you." (Govt. Ex. 3P at 30.)

Sadiqullah states that the men could not take legal action against Elkohli because they gave him cash that they "didn't pay taxes on." (Govt. Ex. 3P at 31-32.) Smith states that Elkohli knew the men could not go to the police. (Govt Ex. 3P at 32.) Shalash stated, "you might go to jail for tax fraud." Smith agrees. (Govt. Ex. 3P at 32.) Shalash states, "that's why we want to do it his way." (Govt. Ex. 3P at 32.)  Shalash testified that he meant Smith's way. (DE 138, Tr. at 26.) He also testified Smith's way was "violence." (DE 138, Tr. at 26.) Shalash testified that Sadiqullah appeared to agree to do it Smith's way. (DE 138, Tr. at 26.)  Shalash testified that his role in the agreement between him, Sadiqullah, and Smith was "[t]o try to reconcile [the four men] so we can get the address." ((DE 138, Tr. at 26.)  He testified that never occurred. (DE 138, Tr. at 26-27.)

Shalash tells Sadiqullah about Smith, "Brother he's American and he knows the law you know. He knows the law." Smith states, "And because I know the law, I don't go to them when I got a problem. I got guys that will take care of a problem. That's why I'm here for him." (Govt. Ex. 3R at 33.) Sadiqullah states that he is "gonna try, probably talk to them first." (Govt. Ex. 3R at 33.)

Smith later states, "Let me tell you something, you kidnap his son, he's going to pay his bill…But you have to be willing to go that route." Smith explains that Afghanistan is the "Wild West." "You can walk in a guy's house, put an AK up against his head, blow his brains out, nobody's coming after you. Here, you have to do it a certain way." (Govt. Ex. 3S at 34.) Sadiqullah states that, if someone did this to him in Afghanistan, "you just shoot him and go. And there's no cops…." (Govt. Ex. 3T at 35.) Smith states the problem with that method is "you don't get your money back that way." (Govt. Ex. 3T at 35.) Sadiqullah states, "are you going to kidnap him to get your money?" Smith states, "Yes." Sadiquallah asks, "And you're not going to let him to go?" Smith states, "Then you still kill him."

(Govt Ex. 3T at 35.) Sadiqullah states, "And enjoy his life? Then you still kill him and finish him off because he done a lot to you. He deserve it." Smith said the last guy that stole from him, "he's not stealing from anybody anymore. Do you understand?" Sadiquallah states that "we" told Elkohli that he was "gonna pay the big price. You gonna eventually pay the big price." (Govt Ex. 3T at 35.) Smith testified at trial that his understanding was that "big price" meant "death." (DE 120, Tr. at 39, 129.)

Later, Shalash states, "I'm trying to help, you know, I am." Sadiqullah states, "You did your best." (Govt. Ex. 3T at 36.) He then asks, "what we gonna do?" Smith states that if he collects the money from Elkohli then he would take 25 percent. Sadiqullah states, "OK." Shalash explains, "It's just like some lawyers…We win the case…"  Sadiquallah responds "And then you gonna pay." (Govt. Ex. 3T at 37.)

Later, Sadiqullah again asks, "So what are we gonna do?" Shalash responds, "We're gonna get his address. First we're get his address." Sadiqullah responds, "Yeah, we're gonna get his address. But first, I need to talk to the Afghan. . . And mention this like, you know, the way, how we gonna work" (Govt. Ex. 3U at 37.) Smith responds, "no, what you need to do is get all the brothers together and meet with him. Don't even talk to them about it." Sadiqullah responds, "OK." Smith states, "You say 'the imam wants to see all of us.' And then let [Shalash] handle it from there. . .But you just tell them that the imam wants to see everybody." (Govt. Ex. 3U at 38.) Shalash tells Sadiqullah, "You have nothing to do with it, you know. It's just…" Smith again states, "You just say 'the imam wants to see all of us . . . And they're not going to say no to the imam, right?" Smith states, "and then you let him handle putting you guys all back together. Then once that happens, you get me an address for the guy down in Florida, and he gets me the address for the wife up here, and then we'll go from there." (Govt. Ex. 3U at 38.)

13

Sadiqullah states, "We go from there. That's true…the Afghan already have the address, and we gonna hand over the address to him, and let him do his mission." Shalash states, "If they want to. If they don't want to…" Smith states, "then that's fine." (Govt. Ex. 3U at 38.) Sadiqullah states, "That's fine." Shalash states, "You know, there's no hard feeling." (Govt. Ex. 3U at 39.) Shalash testified that here he was referring to "the other Afghanis." (DE 138, Shalash Tr. at 29.) Shalash testified that he understood that the other men from Afghanistan would have the opportunity to join the agreement also. (DE 138, Shalash Tr. at 29.)

On the recording, Sadiqullah responds, "No, they want to. They want to (unintelligible)." Smith states, "Wanting and doing are two different things. Because don't take me wrong. When you tell me to go do this, we are gonna go do it. So accept what happens afterward." (Govt. Ex. 3U at 39.)

Sadiqullah states that he needs to pick up a hotel guest. He states that he has Smith's number. Smith states, "get back with me after you guys get your shit straightened out." Sadiqullah states, "yeah, and we gonna get back to you." (Govt. Ex. 3V at 39.)

Shalash testified that the recordings showed that the agreement was for Smith "to get the son kidnapped, wrap him in  a chair and beat him up, and tell his father either you get the money or you're going to find body parts." (DE 138, Shalash Tr. at 28.) He testified that the agreement was to kidnap Elkohli's son, "strap him in a chair, beat him up, and ask his dad to pay the tab, the money that is owed, or in two days – let's say he said give him two days and he will find body parts of your son scattered." (DE 138, Shalash Tr. at 85.) He testified that the members of the agreement were him, Sadiqullah, and Smith. (DE 138, Shalash Tr. at 28.) During his trial testimony, Shalash denied stating to the FBI that the agreement was to murder Elkohli. (DE 138, Tr. at 84.) He testified that his responsibility in the agreement was "to gather the Afghanis…and try to get the address from them."

14

(DE 138, Shalash Tr. at 28.) Shalash testified that it was also part of the agreement that one of the three would find the address of Elkohli's son. (DE 138, Shalash Tr. at 28-29.)

Smith testified that his impression was that Sadiqullah "fully understood that if we went to go collect his money and he wanted [Elkohli] dead after we collected the money, we would kill [Elkohli]." (DE 120, Smith Tr. at 37.) Smith testified that he understood that Shalash and Sadiqullah had agreed "that they would go get the address for me… and that we would go to collect and take care of collecting the money, whatever it took. And then take care of killing the man once we were done." (DE 120, Smith Tr. at 40.) Smith testified that "whatever it took" included kidnapping Elkohli or his son. (DE 120, Smith Tr. at 53.)

Smith testified that his understanding was that Shalash and Sadiqullah would give him a call when they had the address. (DE 120, Tr. at 40-41.) Smith testified that he asked Sadiqullah during this April 30 meeting, "how far do you want to go with this?" and that Sadiqullah responded, "get the money and then kill him." (DE 120, Smith Tr. at 53.)

### B.  Events on May 2, 2010

Smith testified that he thought it would take a couple of weeks for Shalash and Sadiqullah to reach out to him after the April 30 meeting, but that Sadiqullah actually called him within 36 hours. (DE 120, Smith Tr. at 44.)

On May 2, 2010 at about 3:00, Elkohli picked his son up from school. (DE 139, Jones Tr. at 13.) At some point, Sadiqullah began following them. (DE 139, Jones Tr. at 16.) While following Elkohli, Sadiqullah had telephone conversations with Hadi and another man, Azizullah Hanafi. (DE 139, Jones Tr. at 14-18.)

At about 3:56 p.m., Sadiqullah and Hanafi arrived at a business in Lexington called Twenty Dollar Tire, which is owned by Elkohli. (DE 139, Jones Tr. at 22.) Surveillance cameras at the business

recorded on video some of the events that occurred that day outside of Twenty Dollar Tire. (DE 139, Jones Tr. at 19- 21) In addition, Sadiqullah recorded on his phone the audio of some of the events. (DE 139, Jones Tr. at 43.) The government matched the business's video recordings with Sadiqullah's audio recordings, and they were played to the jury. (DE 139, Jones Tr. at 42-46.) The jury was also provided with transcripts of the audio recordings.

Hadi arrived at Twenty Dollar Tire at about 4:02 p.m. (DE 139, Jones Tr. at 27.) At about 4:08 p.m., Sadiqullah called Smith, who was in Indianapolis. (DE 139, Jones Tr. at 32; DE 120, Smith Tr. at 45.) Smith testified that Sadiqullah said he and the "Afghan brothers" had found Elkohli and that they were "holding him hostage. That they had kidnapped him." (DE 120, Smith Tr. at 45, 48.) Smith testified that "they" told him "that they had him, they were holding him and could I come and take care of the problem." (DE 120, Smith Tr. at 46.) Smith testified that Sadiqullah asked him to "take the man and do whatever I had to do to get his money." (DE 120, Smith Tr. at 52.) Smith testified that he did not understand that Elkohli could simply walk away from the men because Sadiqullah was "adamant about holding him until I got down there." (DE 120, Smith Tr. at 52.) On re-direct, Smith testified that Sadiqullah said the men had "captured" Elkohli. (DE 120, Smith Tr. at 131.)

Smith testified that he did not record this phone call because he did not have a recording device with him. (DE 120, Smith Tr. at 46.) Smith testified that he instructed Sadiqullah not to harm Elkohli. (DE 120, Smith Tr. at 46.) Smith then called his FBI handler, who instructed Smith to tell Sadiqullah it would take him four or five hours to get his "guys together" and drive from Indianapolis to Lexington. (DE 120, Smith Tr. at 47.)

Later, at Twenty Dollar Tire, Hadi and Sadiqullah talk with Elkohli. Hadi explains to Elkohli that the men all have "big families." (Govt Ex. 4A/4G.) Elkohli states, "You guys will get your money. OK? That's it." Elkohli states that he comes to Lexington every Thursday, Friday, and Saturday.

16

Sadiqullah tells Elkohli, "Until you die, until you get hundred years old, we will never let you to enjoy the life if you don't pay us." Hadi indicates that he believes that Elkohli sent Sadiqullah a check. (Govt. Ex. 4B/4H.)

At some point while meeting with the men, Elkohli contacted his lawyer and scheduled a meeting for all the men to meet on Monday, May 6, 2019 at 10:00 a.m. (DE 139, Jones Dep. at 59, 98.)

Later, Sadiqullah states to Hadi in Pashto, "we have called the guy over – that guy." (Govt. Ex. 4B/4H.) At about 4:27 p.m., Sadiqullah and Hadi enter the business and have a verbal altercation with an employee. (DE 139, Jones Dep. at 51-52.) The employees order the men to leave and threaten to call the police. Sadiqullah directs the employees to "[c]all the fucking cops." (Govt. Ex. 4B/4H.)

A video a few minutes later captures Hadi, Hanafi, and Sadiqullah speaking to each other in Pashto in the parking lot. Hadi states they have been "kicked out." Sadiqullah states, "He says that he doesn't want to talk to us anymore, what do you want to do? Beat up La? If you want to beat him up lets beat him up. He has said that he doesn't want to talk to you anymore." (Goft. Ex. 4C/4I.) Hadi states, they "should have strangled him." Sadiqullah states, "strangle – we should have done it at the same place." (Govt. Ex. 4C/4I.)

An employee comes out and asks the men if they are "done talking to" Elkohli, and Hadi says, "give us…five minutes, then we will go." (Govt. Ex. 4C/4I.) Elkohli emerges to talk with the men again. He tells them he has to go "home" this weekend. (Govt. Ex.4D/4J.) Elkohli states, "I'm not your enemy." Sadiqullah tells Elkohli, "No enemy, no enemy, we still like you, we still love you…." Hadi tells Elkohli, "I fuck with you, but I love you." (Govt. Ex. 4D/4J.) Elkohli hugs Hadi and, at about 4:42 p.m., gets in a car and leaves the store with his son. (Govt. Ex. 4F/4L; DE 138, Jones. Tr. at 60, 64-65.)

Sadiqullah, Aziz, and Hadi remain in the parking lot and speak to each other in Pashto. Hadi states that Elkohli's son is "still sitting there, what if he leaves today?" Sadiqullah says, "He isn't going

anywhere; his mother, his American wife won't move. They will bring his son back to his American wife. This is a court." Hadi states, "he doesn't get away from us." Sadiqullah states, "he said we will talk there on Monday. Now what would you do with him? The only thing left is beating him up." Hanafi states, "Monday 10 o'clock in the morning." (Govt. Ex. 4E/4K.)

Sadiqullah states, "If he comes every weekend, I told you yesterday, I said, we should barricade that place every Saturday and Sunday." (Govt. Ex. 4F/4L.) The men exchange various phone numbers they have for Elkohli. (DE 138, Jones Tr. at 101-02.) During this conversation, Sadiqullah received Elkohli's phone number. (DE 138, Jones Tr. at 102.) Hanafi asks, "What do we do now? What do we do on Monday?" Sadiqullah responds, "I have promised the lawyer for 10:00. How would a lawyer lie…An American doesn't lie." (DE 138, Jones Tr. at 103.) Sadiqullah states, "[e]ven if you get a $300,000 call, cancel it…That is our place at 10:00 on Monday. The lawyer's place…we shouldn't even be late by a minute." (DE 138, Jones Tr. at 103-04.)

Sadiqullah and Hadi left Twenty Dollar Tire at about 4:46 p.m. (DE 138, Jones Tr. at 65.)

Smith then called Sadiqullah back twice. Both phone calls were recorded, and the recordings were played for the jury. The jury was also provided with written transcripts of the calls. (DE 120, Smith Tr. at 48.)

The first phone call occurred at about 5:03 p.m. (DE 138, Jones Tr. at 66.) Sadiqullah told Smith, "We captured the guy [Elkohli]." (Govt. Ex. 5; Ct. Ex. 8 at 1.) Smith told Sadiqullah not to hurt Elkohli's face or hands in case Smith and his men had to walk Elkohli into a bank to get money or a title company to sign over property. Smith explained that Elkohli could not appear injured. (Govt. Ex. 5; Court Ex. 8 at 1; DE 120, Smith Tr. at 49-50.) Smith said this because the FBI had instructed him to keep Elkohli safe. (DE 120, Smith Tr. at 50.)

Sadiqullah then tells Smith that Elkohli "left from the place here…the place…where we capture him." (Govt. Ex. 5, Ct. Ex. 8 at 1; DE 120, Smith Tr. at 50.) Smith testified that he was surprised by this because he could not understand why Sadiqullah let Elkohli "walk away" if he wanted to collect his money. (DE 120, Smith Tr. at 50.) In the phone call, Smith asked Sadiqullah why the men did not "keep" Elkohli. (Govt. Ex. 5, Ct. Ex. 8 at 1.) Sadiqullah responded, "he just say that he has a, his child with him, like his kid, so he have to take his kid back to the mom, the mommy's house, and, um, he say he swear he say he's gonna pay, and Monday we gonna see his lawyer…. (Govt. Ex. 5, Ct. Ex. 8 at 2.) Sadiqullah explained that Elkohli had told the men that his lawyer would show the men Elkohli's assets and would sell them and give the men the proceeds. (Govt. Ex. 5, Ct. Ex. 8 at 2.) He states that they had to let Elkohli leave because, "if we hold him for longer, we will have to hit him…Because he was walking and we could not…just hold him, because if you wanna hold him, you have to hit him to hold him." (Govt. Ex. 5, Ct. Ex. 8 at 2.)

Smith asks Sadiqullah if Sadiqullah could keep "eyes" on Elkohli until the next day. (Govt. Ex. 5, Ct. Ex. 8 at 2; DE 120, Smith Tr. at 54.) Sadiquallah responds, "let me talk to the other Afghans, the other peoples. . . ." (Govt. Ex. 8 at 2.) Sadiqullah states, "So the next step, when we capture, when we see him again, we'll probably call you again." (Govt. Ex. 5, Ct. Ex. 8 at 2.) Smith agreed with that plan, explaining it would do him no good to come to Lexington if Sadiqullah did not have Elkohli "in possession" or know where he was. He stated, "Because I'm gonna be bringing a couple guys with me, we'll put him in a van, we'll take him where we need to take him, we'll do what we gotta do in order to get him to either turn something over on paper, or walk him into a bank to cash a check." (Govt. Ex. 5, Ct. Ex. 8 at 3.) Sadiqullah stated, "OK." Smith stated, "whatever we think we can get out of him, then you guys can make up your mind at that point and tell me how you want to handle it. Whether you

want me to take him out, and take him out, or if you just want me to teach him a lesson." (Govt. Ex. 5, Ct. Ex. 8 at 3.)

Smith asked Sadiqullah if he had an address for Elkohli or his wife. Sadiqullah stated he did not. He stated, "But, let  me talk to those guys and then, if we see him tomorrow or the next day, because he's going to be in Lexington until Sunday…and….we'll talk to those people, the other, the other three guys." (Govt Ex. 5, Ct. Ex. 8 at 3.) Sadiqullah states that he will call Smith and, "hopefully, you have a time, you can come by…" Smith explained to Sadiqullah that he was in Indianapolis and that it would take him four hours to drive to Lexington. (Govt. Ex. 5, Ct. Ex. 8 at 3.) Sadiqullah states that he will call Smith back when he sees Elkohli. (Govt. Ex. 5, Ct. Ex. 8 at 4.) Smith instructs Sadiqullah to get an address. Sadiqullah stated, "for sure we gonna get you the address." (Govt. Ex. 5, Ct. Ex. 8 at 4.)

Smith asks if Elkohli's son was with him. Sadiqullah says he was. Smith asks if that is the son that Sadiqullah had told him Elkohli cared about, and Sadiqullah says he was. Smith stated, "So, if we grab the son, the old man will still come around, right?" Sadiqullah responded, "yeah." (Govt. Ex. 5, Ct. Ex. 8 at 4.) Smith asks Sadiqullah if he knows where the son lives, and Sadiqullah responds, "No." (Govt Ex. 5, Ct. Ex. 8 at 4.) Smith instructs Sadiqullah to get the son's address, and Sadiqullah responds, "OK. I will call you." (Govt. Ex. 5, Ct. Ex. 8 at 4.)

Smith's FBI handler was concerned that Sadiqullah would find Elkohli and hurt him. (DE 120, Smith Tr. at 55.) So, at about 5:24 p.m., Smith called Sadiqullah again. (DE 120, Smith Tr. at 54-55, 120; DE 138, Jones Tr. at 66.) In this conversation, Smith told Sadiqullah he would come to Lexington the following morning with some of his "guys." (Govt. Ex. 5, Ct. Ex. 9 at 9.) Sadiqullah responds, "but we don't. . . we cannot capture him." Smith instructs Sadiqullah not to worry about finding Elkohli because Smith has some friends who can locate Elkohli with only his phone number. Sadiqullah responds, "let me talk to the…other three people." (Govt. Ex. 5, Ct. Ex. 9 at 1.) Sadiqullah explained

that there was still a conflict between him and the other Afghan men because Shalash had not talked to them yet. (Govt. Ex. 5, Ct. Ex. 9 at 1.) Smith states, "you need to get with the Sheikh [Shalash] tonight, the four of you." Sadiqullah responds that he is going to meet with Shalash that night. Smith instructs Sadiqullah not to do anything until Smith arrives the next day. "I will find the guy. I have my ways." (Govt. Ex. 5, Ct. Ex. 9 at 1.)

Sadiqullah states, "If everybody come talk to the Sheikh, and Sheikh solves the problem between us, and then I'm gonna give you a call tonight. I say – it worked out, you can start the mission." (Govt. Ex. 5, Ct. Ex. 9 at 2.) Sadiqullah continues, "But (unintelligible) I haven't talked to you, you don't come over here because the first thing who needs to talk, we need to get rid of…the problem between us, and if you come and do that, then they will blame on me again, you know what I mean?" (Govt. Ex. 5, Ct. Ex. 9 at 2.) Smith states, "Gotcha. So go head and…. get your stuff together tonight with [Shalash], and then call me back after the four of you guys, five of you guys, meet." Sadiqullah responds, "that sounds like a plan brother" and the conversation ends.  (Govt. Ex. 5, Ct. Ex. 9 at 2.)

At about 5:40, Smith sent Sadiqullah a text messages asking for Elkohli's telephone number and for the phone number of Elkohli's son. (DE 120, Smith Tr. at 120; Def. Ex. 7.) Sadiqullah texted back, "I don't have it." (DE 120, Smith Tr. at 120; Def. Ex. 7) Smith texts back, "Do any of the other brothers have it the ones that went down to Florida and met him in his house?" Sadiqullah responds, "Maybe but they don't share anything with me." (DE 120, Smith Tr. at 120-21; Def. Ex. 7.) Smith texts back, "When you meet them at the mosque tonight with Sheik get the telephone number from." (DE 120, Smith Tr. at 121; Def. Ex. 7.) Sadiqullah texts back, "Let me plz talk first and see what they want if they want your way then I will ask them." (DE 120, Smith Tr. at 121.) That was the last communication between Smith and Sadiqullah. (DE 120, Smith Tr. at 121.)

The following Monday (May 6), the men did meet with Elkohli's bankruptcy attorney. (DE 139, Jones Dep. at 104.) Sadiqullah was arrested on May 8. (DE 139, Jones Tr. at 72.)

## C.  Analysis

Many of Sadiqullah's statements on April 30 and May 2 are capable of more than one interpretation. The ambiguity may be because Sadiqullah's native language is not English. That fact may also have affected his understanding of statements made by others.

Regardless, there are a few things that are clear. Sadiqullah was angry at Elkohli, and so were Hadi and two other men from Afghanistan. They thought Elkohli had stolen a lot of money from them -- $200,000 in total. But there was a conflict between Sadiqullah and the other men. And, in the April 30 meeting, Sadiqullah and Shalash agreed that only Shalash could resolve the conflict. They also agreed that Shalash would gather the four men for a meeting.

Based on the evidence, one rational interpretation of the meeting is the one offered by Sadiqullah. He argues that he left the meeting intending to talk with the other men from Afghanistan about Smith's proposed "way" of collecting their money. Sadiqullah would then get back with Smith if he and the other men agreed to go Smith's "way." Sadiqullah points out that he states at the conclusion of the April 30 meeting that he is going to talk to the Afghan men and "mention this like, you know, the way, how we gonna work." He also points out that, near the end of the meeting, Smith indicates that the parties have not agreed on any plan yet stating, "Wanting and doing are two different things. Because don't take me wrong. *When you tell me to go do this*, we are gonna go do it. So accept what happens afterward." Smith then instructs Sadiqullah to get back with him after Sadiqullah and the other Afghan men have their "shit straightened out."

22

Under this interpretation of the meeting, Sadiqullah and Shalash came to no agreement at the April 30 meeting other than to talk with the other Afghan men. If all of the men should agree to use Smith to kidnap and kill, Sadiqullah would then contact Smith.

Nevertheless, the government presented at least enough evidence to convince a single rational juror of its interpretation of the meeting. According to the government, Sadiqullah reached an agreement with Shalash on the spot of the April 30 meeting to use Smith to kidnap Elkohli or his son and then to kill Elkohli. The only question remaining was whether the other men "could be recruited into the conspiracy." (DE 143, Response at 19.) Sadiqullah would meet with the men to see if they did want to go Smith's "way" and to get Elkohli's address so that Smith could carry out the kidnapping and killing. Under this interpretation, regardless of what the other Afghan men wanted to do, Sadiqullah had already instructed Smith to kidnap Elkohli or his son, collect Sadiqullah's money, and then kill Elkohli.

There is sufficient evidence to support this interpretation of the meeting. At the meeting, speaking of Elkohli, Sadiqullah states to Smith, "We want him die." While his later statement that he wants Elkohli to "die" like Elkohli made the men "die" may indicate that Sadiqullah did not mean the word "die" literally in this instance, Sadiqullah later makes a couple of clarifying statements. He states, "If someone can kill him for $10,000, we all four will pay someone $10,000." Sadiqullah does say this is an "example," but it is a reasonable interpretation that he was referring to the amounts that the men would be willing to pay, not the act of killing. Later in the conversation, Smith suggests a different amount – 25 percent of whatever he collects from Elkohli – and Sadiqullah states, "OK." During the meeting, Sadiqullah explicitly states, "We don't want him to be alive anymore, enjoy his life."

When Smith raises the possibility of kidnapping one of Elkohli's family members, it is Sadiqullah who informs Smith that Elkohli has a son in Lexington, who Elkohli loves. When Smith says they will

take the son, "put him in a chair" and "beat the hell out of him," and send pictures to Elkohli, Sadiqullah's only concern is that he would be charged with kidnapping. Later Smith states, "you tell me to kill him, we will kill him." Sadiqullah states, "We do really need you."

Seemingly referring to Elkohli, Sadiqullah asks if Smith is going to "kidnap him to get your money." When Smith answers in the affirmative and states, "then you still kill him," Sadiqullah states, "Then you still kill him and finish him off because he done a lot to you. You deserve it." Sadiqullah then states that "we're going to get his address." He notes that the other Afghan men have the address, and explicitly states: "we gonna hand over the address to him and let him do his mission."

This is sufficient evidence for a rational juror to find that Sadiqullah and Shalash agreed to use Smith to kidnap Elkohli or his son and to kill Elkohli.

To the extent that Sadiqullah's intent at the April 30 meeting is unclear, his actions on May 2 provide more clarification. First, after Elkohli picked up his son from school that day, Sadiqullah began following them in a car. He and Hadi ultimately ended up at Twenty Dollar Tire that day and had such a confrontation with Elkohli that the employees made them leave the store. Sadiqullah then calls Smith and states that the men had captured Elkohli, and he asks Smith to come to Lexington to "take care of the problem." The only assistance that Smith had offered Sadiqullah at this point was to kidnap Elkohli or his son and to kill Elkohli. Smith had further indicated at the April 30 meeting that he needed an address to do this. Thus, a rational juror could infer that, by calling Smith on May 2, Sadiqullah left the April 30 meeting with the understanding that Smith would kidnap or kill upon learning of Elkohli's location. Having found that location, Sadiqullah called Smith so he could carry out the agreed plan. This is a rational inference knowing nothing about the content of the first call between Smith and Sadiqullah (the one call that was not recorded) at all.

The later recorded conversations that day between Smith and Sadiqullah confirm this interpretation. Smith states his plan is to bring some guys with him and put Elkohli "in a van...take him where we need to take him...do what we gotta do" to make Elkohli turn over some assets. Smith states then all the men can decide whether they want Smith to "take him out" or just "teach him a lesson." Later, Sadiqullah states that "for sure" the men will give Smith an address. When Smith suggested that he and his men "grab the son" because that will make Elkoli "come around," Sadiqullah agrees.

Sadiqullah argues that the FBI did not actually believe the parties had reached an agreement at the April 30 meeting. He points to FBI Agent Kacy Jones' testimony that the FBI report of the April 30 meeting indicated that Sadiqullah "left the meeting with the intention of talking to his fellow Afghanis and they were going to recontact when they had agreed on a plan." (DE 139, Jones Tr. at 88-89.) Sadiqullah also points to Jones' testimony that the FBI "thought we had more time" before Sadiqullah would contact Smith. Jones testified the FBI was not "expecting this to happen on May 2nd, or we weren't expecting it to happen that fast." (DE 139, Jones Tr. at 4.) Sadiqullah argues that, if the FBI reviewed the April 30 meeting and thought an agreement had been reached, the phone call on May 2 would not have surprised anyone. (DE 145, Reply at 3.)

But how the FBI interpreted the April 30 meeting is not dispositive on the issue of how a rational juror could interpret the meeting. As the Court has recognized, interpreting the conversation as arriving at an agreement between Shalash and Sadiqullah to hire Smith to kidnap and kill is not the *only* reasonable interpretation of the April 30 meeting, but it is *a* reasonable interpretation. The only unknowns were Elkohli's address and that of his son and whether the other Afghan men would also pay Smith for his services.

Sadiqullah argues that not even Shalash and Smith agreed on precisely what the agreement between the men was. Shalash testified that the agreement was only to kidnap Elkohli or is son. He denied they agreed to kill Elkohli. Nevertheless, Shalash and Smith were testifying only as to their perceptions of the agreement. The jury did not have to find their perceptions credible. The jury heard recordings of the April 30 meeting from which they could arrive at their own conclusion about what, if any, mutual understanding the parties reached.

Sadiqullah also argues that the events on May 2, far from confirming that an agreement to hire Smith to kidnap and kill was reached on April 30, in fact support his argument that no agreement was ever reached. Sadiqullah points out that, when Smith texted him after the confrontation on May 2 at Twenty Dollar Tire and asks for Elkohli's phone number and address and the address of Elkohli's son, Sadiqullah did not send Smith that information. The evidence showed that, at that point, Sadiqullah did, in fact, have Elkohli's phone number and he knew the addresses for Twenty Dollar Tire and for Elkohli's son. Elkohli had texted Sadiqullah his son's address as early as October 21, 2018 because Sadiqullah had driven the son somewhere. (Govt. Ex. 21C; DE 139, Jones Tr. at 77, 124.) And Sadiqullah clearly remembered that October 2018 text message with the son's address because, on April 30, he texted that address to Hadi. (DE 139, Jones Tr. at 77-78.)

Further, Sadiqullah points out that, on May 2, in his last communication with Smith, Sadiqullah stated, "Let me plz talk first and see what they want if they want your way then I will ask them." Moreover, Sadiqullah points out that the confrontation at Twenty Dollar Tire ended with an embrace between Hadi and Elkohli and with Hadi and Sadiqullah planning on meeting with Elkohli's bankruptcy attorney the following Monday. Further, Agent Jones testified that she understood the men did meet with the attorney.

26

These actions after the April 30 meeting may indeed be inconsistent with a confirmed plan to use a hitman to kidnap and kill Elkohli. Nevertheless, as discussed, the statements at the April 30 meeting can be reasonably interpreted to establish that Sadiqullah entered into an agreement to hire Smith – who Sadiqullah knew lived in Indianapolis – to kidnap and kill and that he intended to join that agreement. This completes the crime of conspiring to commit murder. *See* 18 U.S.C. § 1958(a); *United States v. Blackwell*, 459 F.3d 739, 760 (6th Cir. 2006). The phone call by Sadiqullah to Smith after locating Elkohli that day could reasonably be interpreted as the overt act necessary for completing the kidnapping conspiracy. *See* 18 U.S.C. § 1201(c); *United States v. Ouedraogo*, 531 F. App'x 731, 742 (6th Cir. 2006); *Blackwell*, 459 F.3d at 760. Thus, the May 2 statement and actions after the first phone call indicating that Sadiqullah had a change of heart are irrelevant. The criminal conspiracies had already taken place.

## II.   Motion for New Trial

Under Rule 33(a), the Court may set aside the verdict and grant a new trial if the "interest of justice" requires that. "A new trial may be granted under Rule 33 if the extraordinary circumstance arises that the evidence preponderates heavily against the verdict." *United States v. Ray*, 597 F. App'x 832, 840 (6th Cir. 2015). "The district judge may weigh the evidence and assess the credibility of witnesses in the role of a thirteenth juror." *Id*. "Motions for a new trial are not favored and are granted only with great caution." *United States v. Fritts*, 557 F. App'x 476, 479 (6th Cir. 2014) (quoting *United States v. Garner*, 529 F.2d 962, 969 (6th Cir.1976)). The defendant "bears the burden of proving that a new trial should be granted." *Id*. (quoting *United States v. Davis*, 15 F.3d 526, 531 (6th Cir.1994)).

In support of his motion for new trial, Sadiqullah argues that the only two individuals who testified as to what occurred on April 30 were Shalash and Smith and that neither was credible. Sadiqullah argues that Smith's testimony regarding what Sadiqullah said to him in the first May 2 phone call that

was not recorded is not credible. Smith testified that Sadiqullah said the men had kidnapped and captured Elkohli and that Sadiqullah asked him to "come and take care of the problem." (DE 120, Smith Tr. at 46.) Smith testified that Sadiqullah asked him to "take the man and do whatever I had to do to get his money." (DE 120, Smith Tr. at 52.) Sadiqullah argues this is not consistent with his statements during the later phone calls and texts that were recorded on the same date. As discussed, in those phone calls and texts, Sadiqullah declines to give Smith the phone number or address of Elkohli or Elkohli's son even though he has the information.

Without even considering any of the testimony that Smith gave regarding the contents of the first phone call, however, a reasonable inference is that Sadiqullah called him to complete the plan of kidnapping and killing. As discussed, this is the only assistance that Smith had ever offered to provide Sadiqullah. There was no other reason that Sadiqullah would have called him that day.

The recordings of the April 30 conversation alone are sufficient evidence from which a jury could find that Sadiqullah and Shalash agreed to pay Smith to kidnap Elkohli or his son and to kill Elkohli. Accordingly, even if the Court were to determine that neither Smith nor Shalash was a credible witness, a new trial is not warranted.

## III. Conclusion

For all these reasons, the Court hereby ORDERS that Sadiqullah's motion for judgment of acquittal or, alternatively, for a new trial (DE 142) is DENIED.

Dated July 28, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

28