UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>V.<br><br>FNU JOHN SADIQULLAH,<br><br>   Defendant. | CRIMINAL NO. 5:19-101-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the defendant Fnu Sadiqullah's motion (DE 244) for reconsideration of the Court's prior order denying his motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

A jury found Sadiqullah guilty of two conspiracy counts. The first count was for conspiring to kidnap for ransom a man who owed Sadiqullah money or that man's son in violation of 18 U.S.C. § 1201(c). The second count was for conspiring to use interstate facilities in the commission of a murder-for-hire in violation of 18 U.S.C. § 1958. By judgment dated October 13, 2020, the Court sentenced Sadiqullah to a prison term of 106 months. According to the Bureau of Prisons' website, Sadiqullah will complete his sentence on November 16, 2026. He is currently incarcerated at Lexington FMC.

18 U.S.C. § 3582(c)(1)(A) provides for what is commonly referred to as "compassionate release." The Court may grant a motion for compassionate release filed by the defendant himself "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C.A. § 3582(c)(1)(A). The Sixth Circuit has determined that the occurrence of one of the two events

mentioned in the statute is a "mandatory condition" to the Court granting compassionate release. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). If the government "properly invoke[s]" the condition, the Court must enforce it. *Id.* at 834.

Sadiqullah has presented evidence that he meets the mandatory condition. (DE 238-1, E-mail to Warden.) The government does not dispute that. Accordingly, the Court may consider this motion.

The compassionate release statute permits this Court to "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C.A. § 3582(c)(1)(A). Under the applicable provision of Section 3582(c)(1)(A), however, the Court may grant this relief only if it finds that "extraordinary and compelling reasons warrant such a reduction," and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.A. § 3582(c)(1)(A)(i).

Sadiqullah asserts the following as extraordinary and compelling circumstances: 1) he has a minor son who suffers from autism; 2) his wife was the child's primary caregiver, and she is ill and no longer capable of performing those duties; and 3) Sadiqullah is the only immediate family member who can perform these duties.

The applicable policy statement provides examples of extraordinary and compelling circumstances, which include certain family circumstances of the defendant. U.S.S.G. 1B1.13(b)(3). The family circumstances include "the death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. 1B1.13(b)(3)(A). The policy statement also provides that circumstances "similar in gravity" to the other circumstances set forth in the statement can be extraordinary and compelling. U.S.S.G. 1B1.13(b)(5).

Sadiqullah is originally from Afghanistan. With his motion, he submitted evidence in the form of letters from various U.S. military personnel that he provided crucial support to the U.S. government during the Afghanistan War. He also submitted evidence that he was employed by the U.S. government and provided "faithful and valuable service," and that he and his family faced an ongoing serious threat as a result. (DE 241-1 Letters.)

He has presented evidence that his wife suffered a severe head trauma after being beaten by the Taliban, leading to post-traumatic stress disorder, major depressive disorder, generalized anxiety, chronic migraines, and insomnia. (238-1 Ex. 2, 3, 6.) Sadiqullah also presented evidence that one of his minor sons suffers from autism spectrum disorder (level 3), global development delay, mixed receptive-expressive language disorder, encopresis, and functional urinary incontinence. (DE 238-1 Ex. 4, 5). Complicating Sadiqullah's family situation is the fact that his wife does not speak English. (DE 238-1 Ex. 2.). Sadiqullah asserts that his son's doctor's appointments frequently must be rescheduled because interpreters are not available. Sadiqullah speaks English; he served as an interpreter for U.S. Armed Forces during the Afghanistan War.

Sadiqullah asserts that, while his motion for compassionate release was briefed, the Taliban murdered his father in Afghanistan, likely due to his family's ongoing support and assistance to the U.S. military. (DE 241 Reply 6.) Sadiqullah asserts that his wife and children previously relied on his father for support.

With his initial motion for compassionate release, however, Sadiqullah did not present sufficient medical evidence that his wife is incapable of caring for her autistic son as the statute requires. Accordingly, the Court denied Sadiqullah's motion for compassionate release without prejudice, explaining that he could file another motion for compassionate release with medical evidence that his wife is incapable of providing adequate care for his autistic son on her own.

Sadiqullah now submits letters from the following healthcare providers:

3

- Ashley M, Mercer, APRN at Baptist Health Medical Group Neurology. Mercer states that Sadiqullah's wife Halima Alkozai has been treated at the clinic since 2021 for intractable chronic migraine headaches but has not responded to treatment. Further, Alkozai's anxiety, depression, insomnia, and reports of PTSD "can all be negatively affecting her migraines and vice versa." Mercer opines that Alkozai is "completely incapacitated due to her chronic medical conditions and she is unable to provide adequate care to her autistic son on her own during these times."

- Daniel Miller, Ph.D, Licensed Psychologist. Dr. Miller states that Alkozai has been treated for trauma, depression, anxiety, PTSD, and pain related to severe migraine headaches. He states that the recent murder of Alkozai's father-in-law by the Taliban has adversely impacted her coping skills because "he was her last pillar of support from Afghanistan." He states that Alkozai has "significant neuropsychological symptoms" and suffers posttraumatic stress caused by witnessing traumatic violence by the Taliban in Afghanistan against family members. Further, Alkozai herself suffered blunt force trauma to her head by the Taliban, causing Alkozai's coping skills and cognition to decline and chronic migraines. He states that Alkozai's youngest son, who is 7, has severe autism requiring constant close supervision. Dr. Miller opines that Alkozai's difficulty understanding English "combined with health conditions, make her unable to provide adequate care for her autistic son on her own." He opines that, Alkozai's "level of survival can only last temporarily, she needs the help of her husband every day as she has no one else to help her. Her husband's release from prison is needed to provide the adequate, necessary, care all 3 children require[] as well as help to care for [Alkozai] in her own medical crises."

- Miranda Hatfield, Licensed Social Worker and Therapist at the Baptist Health Medical Group. Hatfield states that Alkozai is "is in a unique situation because she has her own

4

mental health issues, including symptoms of PTSD, anxiety, and depression from war and terrorism in her home county of Afghanistan" and "having to raise a child on her own in the United States who was diagnosed with severe autism along with two other young boys." Further, "she has limited English speaking ability." She opines that Alkozai is "incapable of providing adequate care for her son with autism on her own and without [Sadiqullah's] help."

(DE 241-1 Medical Letters.)

Accordingly, Sadiqullah has demonstrated extraordinary and compelling circumstances warranting his release from prison. He has produced evidence that his wife is incapable of caring for at least his minor son who has autism. The United States argues that Sadiqullah has not presented evidence that he is the only available caregiver for his child or spouse. However, the presentence report in this case determined that Sadiqullah's siblings reside in Germany because of the danger posed to them in Afghanistan. At the time of sentencing, both parents still resided in Afghanistan. As discussed, his father was recently murdered by the Taliban. There is no evidence of any other person available to care for Sadiqullah's minor sons. This meets the requirements of U.S.S.G. 1B1.13(b)(3)(A) or at least presents circumstances "similar in gravity." U.S.S.G. 1B1.13(b)(5).

The United States also argues that Sadiqullah remains subject to an immigration detainer that would likely take effect upon his release from Bureau of Prisons custody. The Court explained at sentencing, however, that it would determine Sadiqullah's sentence without considering his immigration status.

Next, the Court must consider whether "the factors set forth in section 3553(a) to the extent that they are applicable" support the requested sentence reduction. 18 U.S.C. § 3582(c)(1)(A). These factors include:

>    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>    (2) the need for the sentence imposed--
>       (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>       (B) to afford adequate deterrence to criminal conduct;
>       (C) to protect the public from further crimes of the defendant; and
>       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]
>    (3) the kinds of sentences available;

18 U.SC. § 3553(a)(1)-(3).

The § 3553(a) factors also include, the "kinds of sentence and the sentencing range" established in the guidelines; "any pertinent policy statement" issued by the Sentencing Commission; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution to any victims of the offense." § 3553(a)(4)-(7).

The crimes for which Sadiqullah was convicted are serious. However, these crimes were not consistent with Sadiqullah's history or nature. He began working for the United State military when he was 14 years old alongside his mother as a kitchen employee at a United States military base. (DE 201 Tr. 6.) He learned English and then began working as an interpreter for the United States' armed forces. (DE 201 Tr. 7.) He suffered unimaginable losses as a result, including physical wounds he received while working in combat zones with American troops. (DE 201 Tr. 8-9; Presentence Report (PSR).) The Taliban has injured and killed multiple members of Sadiqullah's family in retaliation for their work for the American military. (DE 201 Tr. 9.) After suffering numerous tragedies and acts of violence against himself and his family, including the attempted kidnapping of his son and the beating of his wife, Sadiqullah obtained a visa to travel with his family to the United States. (DE 201 Tr. 13; PSR.)

Sadiqullah has submitted letters written by various American military personnel in support of his visa application. These letters are a testament to Sadiqullah's loyalty to the United States and the damages he and his family endured as a result. Below are some of the comments by the officers:

- Sadiqullah "continually demonstrated relentless dedication and sincere loyalty to the US Government, despite numerous incidents where he and his family were targeted by enemy forces for his affiliation with the US Army. . . [He] displayed unwavering courage at my side while being engaged by enemy fire."

- "This young man has repeatedly placed himself in harm's way in support of Coalition Forces. Unquestionable devotion!"

- Sadiqullah "loves his country and risks his life daily to improve it. He could easily support his family in other occupations, but his strong character and language talents are needed for the success of the nation. This is not a six-month or one year assignment for [Sadiqullah]; he has been in uniform for years supporting Coalition Forces."

- Sadiqullah "has demonstrated his loyalty and language skills while serving alongside US Conventional Forces and Special Operations Forces during combat and counterinsurgency operations. [Sadiqullah] consistently demonstrated courage and selfless service while encountering many dangerous situations including. coming under direct fire."

- "On multiple occasions [Sadiqullah] and his family have been victims of malicious acts geared toward US Forces and Local National Linguists. Even after multiple attacks [Sadiqullah] has remained loyal to Coalition Fonces in efforts to promote the US mission in Afghanistan. This proves without fail, that [Sadiqullah] always demonstrates courage and selfless service while performing duties that many of his peers would not."

(DE 241-1 Letters.)

Sadiqullah committed the crimes here because he believed an individual named Lahoucine Elkohli owed him money and largely because, as is customary in his community, Sadiqullah placed his trust in a religious leader to resolve the dispute. (DE 201 Tr. 17; DE 138 Tr. 18.) That religious leader was codefendant Mahmoud Shalash, who was the imam of the Islamic Center in Lexington. It was Shalash who connected Sadiqullah to a man who Shalash believed could harm Elkohli to collect the debt. Unbeknownst to both Shalash and Sadiqullah, that man was a government informant. Given Sadiqullah's character up to these events, it is unlikely that Sadiqullah would have ever become involved in these crimes without Shalash's guidance.

In his last meeting with Elkohli, Sadiqullah told Elkohli that he was not Sadiqullah's enemy and that Sadiqullah loved him. Sadiqullah agreed to meet with Elkohli's lawyer to resolve the dispute, and he permitted Elkohli to drive away with his son. (Govt Ex. 4D/4J; Govt. Ex. 4F/4L; DE 138 Tr. 59, 60, 64-65, 98, 103-04; Govt. Ex. 5; Ct. Ex. 8 at 2.) The following Monday, the men did meet with Elkohli's bankruptcy attorney. Sadiqullah was arrested days later. (DE 139 Tr. 72, 104.) While the most recent interaction with Elkohli and Elkohli's attorney does not diminish the seriousness of Sadiqullah's prior actions, it does indicate that, prior to his arrest, Sadiqullah was pursuing a more rational and legitimate way to resolve his financial dispute than the path Shalash had introduced him to.

Sadiqullah has been in custody for these crimes since May 9, 2019, over five years. Pursuant to his judgment, he will be on supervised release for another five years. The Court finds that, given Sadiqullah's history, that is sufficient punishment to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to deter similar conduct.

The Court must also consider the need to protect the public from further crimes by the defendant. The United States argues that Sadiqullah has not established that he is "not a danger

8

to the safety of any other person or the community" as required by U.S.S.G. § 1B1.13(a)(2). As discussed, this Court has no basis to find that Sadiqullah will commit any further crimes. He had no prior criminal convictions. The mother of the minor child victim in this case has expressed opposition to Sadiqullah's release. The Court understands her concerns. After his release from prison, Sadiqullah will not be permitted to leave the Eastern District of Kentucky without the permission of the Court or his probation officer. Moreover, Sadiqullah will remain under the supervision of a United States probation officer for his five-year term of supervised release and will remain subject to all the conditions of that release set forth in the judgment, including the condition that he shall not have any contact with Lahoucine Elkohli, his family, or property or with Mahmoud Shalash.

For all these reasons, the Court hereby ORDERS as follows:

1) Sadiqullah's motion for reconsideration (DE 244) is GRANTED;

2) Sadiqullah's previously imposed sentence is REDUCED to time served;

3) Upon his release from prison, Sadiqullah MUST PROCEED directly to his wife's residence (the "Residence") and he MUST RESIDE there throughout the term of supervised release unless the U.S. Probation Office for the Eastern District of Kentucky approves a different address;

4) Within 24 hours of his arrival at the Residence, Sadiqullah MUST NOTIFY the U.S. Probation Office for the Eastern District of Kentucky and provide the complete address to the probation office;

5) Sadiqullah MUST ABIDE by this order, the Mandatory Conditions, the Standard Conditions of Supervision, and Special Conditions of Supervision set forth in his judgment to the extent they are not inconsistent with this order. **FAILURE TO ABIDE BY THIS**

9

**ORDER OR ANY TERMS OF SUPERVISION IS GROUNDS FOR REVOCATION OF THE SUPERVISION AND RETURN TO BOP CUSTODY**;

6) The United States Attorney's Office MUST NOTIFY the Bureau of Prisons (BOP) of this order so that it may be put into effect as quickly as possible;

7) This order is stayed for up to 14 days for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. **If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the warden at Sadiqullah's place of incarceration must request additional time by e-mailing chambers at caldwell_chambers@kyed.uscourts.gov**;

8) **Upon his release from BOP custody, Sadiqullah SHALL HAVE NO CONTACT with Lahoucine Elkohli, his family, or property or with Mahmoud Shalash.**

This 1st day of November, 2024.

*Karen K. Caldwell*
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY